In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property of and Rehabilitate THE NATIONAL TITLE GUARANTY COMPANY.

In the Matter of the Application of DAVID GOODSTEIN and NATHAN LICHTENSTEIN, as Trustees under the Last Will and Testament of MORRIS LICHTENSTEIN, Deceased, Respecting Bond and Mortgage of PAUL BUILDING CORPORATION, Guaranteed by NATIONAL TITLE GUARANTY COMPANY.

Supreme Court, Kings County, June 14, 1934.

*Wolfson & Sand* [*Joseph H. Sand* of counsel], for the petitioners.

*Greenbaum, Wolf & Ernst* [*Lawrence S. Greenbaum, Henry Spitz, Philip Levy* and *Theodore S. Jaffin* of counsel], for the State Insurance Department.

BROWER, J. Petitioners are the insured under extension of guaranty policy No. 11,128 issued by National Title Guaranty Company with respect to a bond and mortgage made by Paul Building Corporation to the decedent under date of August 6, 1926, and hold said bond and mortgage as testamentary trustees.

In April, 1933, it appears that the owner of the mortgaged premises orally agreed with the company to pay to it from the rents of the mortgaged premises a fixed sum of $250 monthly beginning with the rents of April, 1933, which sum it was agreed was to be applied by the company to the payment of arrears of interest and taxes and to current interest and taxes, and so long as these payments were made, it was also agreed, no foreclosure proceedings would be instituted and the title and management of the property would remain unaffected.

Under this arrangement, the owner of the equity paid over to the company, after April 1 and before September 1, 1933, a total of $1,200, in five installments, all of which were received by the company and deposited in its general fund, except the last installments of $200, which was received by the company in rehabilitation and deposited in an agency account. No allocation as between interest and taxes, either accrued or to accrue, was settled upon as part of the arrangement. The company applied all but $90 of said $1,200 to reimburse itself for the guaranteed interest it paid on March 1, 1933, under the policy, the $90 having been remitted by letter of the company dated December 18, 1933, addressed to the attorneys of the insured, with instructions that it be applied only towards the payment of taxes.

The lines of demarcation in the policy, which set forth the authority of the company as agent on behalf of the owner of the mortgage, as distinct from those which set forth its authority as aids to the fulfillment of its own promises therein, are poorly defined. It would seem clear, nevertheless, that when moneys were collected by the company under circumstances which made it

doubtful whether they were paid to it as agent of its principal or for its own individual benefit, any question of conflict between its duty to serve the interests of its *cestui que trust* or to serve its own individual interests, must be resolved in favor of those of the *cestui*. The company may not, therefore, be heard to say that this arrangement was made in its own individual interest; it must be regarded as having collected these moneys as agent on behalf of its principal, the owner of the mortgage.

Whatever rights may have been conferred by the mortgage with respect to an assignment of rents in the event of certain defaults happening, the aforesaid arrangement appears to have been a voluntary one between the parties thereto, independent of the provisions of the mortgage and of the policy and created additional security to the owner of the bond and mortgage, for the performance of the particular obligations it made provision for.

When the foregoing arrangement was entered into, there was no foreclosure action pending. The mortgagor was nevertheless in arrears at least for the taxes due November 1, 1932, and was in default certainly for the payment of interest due March 1, 1933; the guaranteed amount of interest due March 1, 1933, had, however, been duly paid by the company out of its own funds.

In applying the installments which were being received out of rents under this arrangement, the company is not embarrassed with any problem of suretyship or guaranty. The agent stands with both feet in the shoes of his principal. The principal had already received the interest due March 1, 1933, and before the arrival of the next interest date, September 1, 1933, these payments out of rents ceased. But there remained taxes, to the payment of which the agent was also authorized to apply these receipts; taxes due November 1, 1932, were in arrears and taxes due May 1, 1933, had accrued during the period while the payments out of rent were being made, said taxes, inclusive of interest thereon, being in excess of the $1,110 recouped by the company. Had the mortgagor paid these rents to the principal directly, instead of through the agent, the principal should have applied them, according to the understanding to said taxes, and such was the duty of the agent, if it did not turn them over to the principal for that purpose. Its own reimbursement out of these rents constituted a misapplication of said funds.

This balance of $1,110 so misapplied by the company is the property of the owners of the bond and mortgage, and in the hands of the agent constitutes a trust fund held for the benefit of said owners to the possession of which they are entitled for the payment of said taxes, if the petitioners are able specifically to trace and

identify these moneys. Lacking the ability to so trace and identify them, these moneys may not be equitably paid over to the owners of the bond and mortgage until such time as it may be ascertained whether or not the total of the funds held by the company in trust is adequate to pay all of the beneficiaries whose trust funds also have been mingled with the general funds. Claims of this character may very well be found to be in excess of such trust funds.

This $1,110 having been paid, though improperly, by the company to itself individually, all of it became mingled in the general mass of its funds and was used in the conduct of its business. None was segregated or earmarked and the rehabilitator here contends, as the court finds, that it is impossible for the petitioners specifically to trace these moneys. The rehabilitator accordingly will be directed to remove from general funds now in his possession the sum of $1,110 and deposit the same in a special account in his name, with proper reference to this application, there to remain until it has been ascertained with reasonable certainty whether or not the funds held in trust in the rehabilitator's hands are sufficient to meet the claims of the petitioners and others whose funds, held in trust by the company, have also been mingled with its general funds, and until and subject to the further order of this court.

Claims or demands which the parties to the policy contract may possess thereunder are not provable or enforcible during rehabilitation and the prayer of the petition with respect to any other claims or demands of the petitioners under or arising out of said policy contract, is denied, but without prejudice to the right of the parties to said policy contract to assert any such claims or demands as and when the same become lawfully provable or enforcible.

Settle order.